# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 16-CR-524 (FAB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SENTENCING HEARING |
| | ) | |
| [1] JOSUE MARRERO-PEREZ, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Thursday, March 23, 2017

APPEARANCES:

For the United States:
>                    MAX J. PEREZ-BOURET, AUSA
>                    United States Attorney's Office
>                    Torre Chardón, Suite 1201
>                    350 Carlos Chardón Street
>                    San Juan, PR 00918

For the Defendant:
>                    VICTOR J. GONZALEZ-BOTHWELL, AFPD
>                    Federal Public Defender's Office
>                    Patio Gallery Building
>                    241 Franklin D. Roosevelt Ave.
>                    Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided
transcription

1           (PROCEEDINGS COMMENCED AT 9:40 A.M.)

2

3           THE CLERK:  Criminal Case No. 16-524, United States

4   of America versus Josue Marrero-Perez for Sentencing Hearing.

5           On behalf of the Government, Assistant United

6   States Attorney Max J. Perez-Bouret.

7           On behalf of the Defendant, Assistant Federal

8   Public Defender Victor J. Gonzalez-Bothwell.

9           Defendant is present and assisted by the certified

10  court interpreter.

11          MR. PEREZ-BOURET:  Good morning, Your Honor.  AUSA

12  Max Perez-Bouret for the Government, and we are ready to

13  proceed.

14          MR. GONZALEZ-BOTHWELL:  Your Honor, let the record

15  reflect that the Defendant does not need the services of the

16  court interpreter.

17          THE COURT:  Thank you.

18          Mr. Gonzalez, is there anything you would like to

19  say on behalf of Mr. Marrero before I pronounce sentence?

20          MR. GONZALEZ-BOTHWELL:  Yes, Your Honor.

21          I have reviewed docket number 47, which is the

22  amended pre-sentence investigation report.  On behalf of my

23  client, I would like to say that the medical -- the paragraph

24  relating to 3553 factors show that he has had a hard life

25  when his father died when he was young, that he has had

1 | issues throughout his life from since he was a juvenile.

2 |       THE COURT: When did his father die?

3 |       MR. GONZALEZ-BOTHWELL: When he was 12-13.

4 |       THE COURT: Mr. Marrero, how old are you now?

5 |       DEFENDANT MARRERO-PEREZ: Thirty-two.

6 |       THE COURT: So your father died 20 years ago?

7 |       DEFENDANT MARRERO-PEREZ: Yes, Your Honor.

8 |       MR. GONZALEZ-BOTHWELL: As he has stated both in

9 | the PSR, he never got over the death of his father at such a

10 | young age. He felt his father was a very good father with

11 | him.

12 |       He has also had issues with drug use throughout his

13 | life. And he has a daughter that is now 16 years old and had

14 | another daughter that died in 2004.

15 |       So, we are not saying that Mr. Marrero-Perez is a

16 | saint, but he has had a rough life that I don't envy in any

17 | way, shape or form, Your Honor.

18 |       The guideline sentence in this case is 37 to 46,

19 | and we are requesting the low end of the guidelines,

20 | Your Honor.

21 |       I know that this is a case where he has a lengthy

22 | history, but most of the cases were dismissed or nolle prose

23 | by the State authorities, and he only has three convictions

24 | that count for a level four. So it's kind of -- he does have

25 | a high criminal history level, but he has only had 17 total

1    offense level points.

2          We believe a sentence at the lower end of the

3    guidelines would be appropriate in this case.  Your Honor, he

4    might be facing revocation in the case in Delaware, so that

5    would add to the sentence.

6          I believe the report contains sufficient 3553

7    factors.  And he has a desire to get over this life he has

8    been leading because of his daughter that is 16 years old.

9          The Court will also be imposing a term of

10   supervised release of approximately three years.  And if he

11   fails the Court, then the Court can always come back and

12   revoke him, if he does not comply with the conditions of

13   supervised release after he serves his time, Your Honor.

14         So we are requesting a sentence at the lower end of

15   the guidelines and three years of supervision.  We are also

16   requesting a recommendation that he be placed in

17   Pennsylvania, and that he receive the benefits from drug

18   program and mental health programs that might be available at

19   BOP institutions in Pennsylvania, Your Honor.

20             THE COURT:  Mr. Perez.

21             MR. PEREZ-BOURET:  Judge, in my career, I have seen

22   few PSRs that have as much reasons to impose a different

23   guideline than the one suggested by the --

24             THE COURT:  A different guideline or a variance?

25             MR. PEREZ-BOURET:  A variance.  A different

1  sentence than the one recommended by the guidelines, Judge.

2        THE COURT:  Are you remembering when you were on

3  the other side of the room?

4        MR. PEREZ-BOURET:  Well, Judge, few clients or now

5  Defendants have had so many circumstances that justify a

6  variant sentence, and it will be an upward variant sentence.

7  And it goes beyond the criminal record, Your Honor.  Because

8  if we talk about in sheer numbers, we have that this

9  Defendant was arrested -- at least convicted prior to having

10  attained the age of 21, 22 convictions before turning 21; 32

11  convictions in total; 45 arrests in total.

12        He is only 31 when he was arrested, Your Honor.  We

13  are not talking -- if you review this record, we would think

14  he's 70.

15        And, Judge, it goes beyond the sheer numbers.

16  Because when you delve into the underlying facts of

17  convictions, it's really disturbing.

18        I point the Court's attention to paragraph 35, when

19  this Defendant was only 14 years old, a tender age, the

20  underlying facts of that case is that he is already armed

21  when he was a teenager, 14 years old.  And not only was he

22  armed, but the co-Defendant in that case said that he

23  discharged his firearm in broad daylight and in public on

24  more than one occasion.

25        Then we go to paragraph 37.  Now he is 16.  And,

1  again, he didn't learn from that occasion, and he is armed

2  again with a handgun.

3          Paragraph 39, still 16.  And this one basically is

4  troublesome because of who the victim was.  We not only have

5  this Defendant's lengthy criminal history, not only do we

6  have this Defendant's in a proclivity towards firearm, but he

7  has an anger management issue.

8          In paragraph 39, he has a conviction for assault in

9  third-degree, while he is 16.  Yet the victim in this case

10  was a female that was three months' pregnant.  The Defendant

11  struck her on the back three times with a 4-foot piece of

12  lattice stick causing the stick to break into several pieces.

13          Paragraph 42, now he is 17, Your Honor.  Yet again,

14  we have him, along with other persons, assaulting a couple.

15  On this occasion, that female, who I understand had a prior

16  relationship with him, was also assaulted and pushed.  And

17  she was two months' pregnant, Your Honor.  Seventeen.

18          Then we turn the Court's attention to paragraph 46.

19  We have a serious drug offense, and he is 18.

20          In each of these sentences, up until now, he has

21  been sentenced to -- some have had prison terms, but most of

22  them have caught him a break to see if he could be

23  rehabilitated and he could rectify his behavior.  But it's

24  like a pressure -- like a valve, and each time it gets more

25  serious and more serious and more serious.

1    At about age 18, he has a serious drug offense, in

2    paragraph 46, for distribution of controlled substances.

3    Then, finally, after other minors arrests, if you

4    want to call it that way, you have paragraph 60, and you have

5    him with another controlled substance offense to which he is

6    granted another break, because he is sentenced to 10 years;

7    however, they suspended those 10 years.  Nine and a half of

8    those years were suspended.  So he was only sentenced to six

9    months.

10    And after that, Your Honor, we have the pending

11    case in Delaware in which basically he, again, is involved in

12    controlled substances.  This time heroin.  And on numerous

13    occasions, according to the confidential informant, of him

14    selling and having persons that work for him that package and

15    distribute.  Only this time, he flees the jurisdiction and

16    avoids prosecution and comes to Puerto Rico.

17    And now he has an outstanding arrest warrant.  And

18    when that arrest warrant is executed, he is found once again

19    armed with not only one but two firearms.

20    Your Honor, we understand the history and

21    characteristics of this Defendant; we understand that he has

22    no respect for the law, evidently; we understand that this

23    sentence should take under consideration all this violence,

24    anger, weapons, controlled substances, pregnant females as

25    victims, and should reflect that track record and that

1    history.

2            In addition, this sentence should protect the

3    public from further crimes from this Defendant, Your Honor.

4            We understand that a guideline sentence of 37 to 46

5    months should not be imposed by this Court.  We are hereby

6    requesting a sentence of 60 months of imprisonment in this

7    case, in addition to the supervised release as ordered by

8    law.

9            MR. GONZALEZ-BOTHWELL:  Your Honor, if I may

10   respond to Mr. Max Perez-Bouret.

11           There are a lot of paragraphs that address his

12   different crimes.  At age 12, criminal mischief.  Same age, a

13   year later, shoplifting.  He was convicted in paragraph 33 of

14   offensive touching.  There is no documentation as to that,

15   what happened in that incident.

16           At age 14, he was convicted again of offensive

17   touching.  Nolle prose as to the remaining count.  No

18   information for the Court to determine what happened there to

19   determine if it's a serious or not offense.

20           Paragraph 35, again, disorderly conduct.  Nolle

21   prose as to Count One.  There were shots fired.  They did not

22   find a gun on him.  So the proclivity to guns is Government

23   made.

24           Paragraph 37, he finally has -- he was sentenced,

25   and there is no information as to this case, no documentation

1    as to this case.

2          Again, paragraph 38, no documentation as to what

3    happened in this case.

4          Paragraph 39, reckless physical injury.  You know,

5    he got into a fight with his brother's family.

6          Then we go into adult convictions, Your Honor.  And

7    most of them are licensed related.  He only had three

8    convictions that count towards his criminal history.

9          Again, he is also a total offense level of 17.

10         Your Honor, the guidelines have taken into

11   consideration all these factors, and they have decided in the

12   guidelines that they will not take into consideration all the

13   factors brought up by the Government.

14         If the Court wants -- obviously, the Court has

15   discretion to go above the guidelines, but I believe that the

16   guidelines do take into conviction all the factors in the

17   life and history of Mr. Josue Marrero-Perez.

18         And, again, although I have never walked in his

19   shoes, it has not been an easy life.  He does have mental

20   health problems that were diagnosed at an early age.  They

21   are in the report.

22         One of the other things I am going to request from

23   the Court is the drug program and mental health treatment,

24   which I think I already stated.

25         So we can give him the 37 months.  And if he fails

1    the Court during supervision, the Court will have him back.

2    And then he can decide that he deserves a higher sentence.

3            Right now we have a chance to make a difference in

4    his life by giving him appropriate treatment.

5            THE COURT:  Mr. Marrero, is there anything you

6    would like to say?

7            DEFENDANT MARRERO-PEREZ:  Yes.

8            I would like to thank you for letting me express

9    myself.  I know I have made a lot of mistakes in my life, but

10   I am willing to change my life.

11           I know that I have to do time, and I have a lot of

12   time to think about all the mistakes that I had did

13   throughout my whole life.

14           I am also asking if you can please give me some

15   treatment and try to get some education because I only

16   completed eighth grade.  So all my life I never had nothing

17   to hang from to try to learn how to -- do any kind of jobs.

18   But right now, as I feel, if I am ever able to go back to the

19   society, even if I had to work at a McDonald's, that's what I

20   am going to have to do to survive and stay in society because

21   I have a 16-year-old daughter and 4-year-old son that I have

22   to look up to, and I also have my wife.

23           I will appreciate it if that's possible.  If not, I

24   leave things up to God and to you that you are the judge.

25           Thank you.

1    THE COURT:  On November 28, 2016, Defendant Josue

2  Marrero-Perez pled guilty to the two-count indictment in

3  Criminal Case No. 16-524, which charges violations of

4  Title 18, United States Code sections 922(g) and 924(a)(2), a

5  convicted felon and being a fugitive in possession of two

6  firearms:  A Glock pistol, Model 27, .40 caliber, serial

7  number PTL803, loaded with nine rounds of ammunition, with an

8  extra Glock magazine with another nine rounds of .40 caliber

9  ammunition; and a Smith & Wesson pistol, Model SW9VE, 9mm

10  caliber, serial number DVS4738, loaded with 16 rounds of 9mm

11  caliber ammunition, with an extra magazine with 15 rounds of

12  9mm caliber ammunition.

13    This is a class C felony.

14    The November 1st 2016 Edition of the Sentencing

15  Guidelines Manual has been used to calculate the guideline

16  adjustments pursuant to the provisions of guideline section

17  1B1.11(a).

18    Because both counts involve the same act or

19  transaction, they are grouped pursuant to sentencing

20  guideline section 3D1.2(a).

21    Because Mr. Marrero has been convicted for

22  committing this offense after having sustained at least one

23  felony conviction of a controlled substance offense, a base

24  offense level of 20 has been determined pursuant to

25  sentencing guideline section 2K2.1(a)(4)(A).

1    Because Mr. Marrero timely accepted responsibility

2 for his offense, however, the offense level is reduced by

3 three levels pursuant to guideline sections 3E1.1(a) and

4 3E1.1(b).

5    There are no other applicable guideline

6 adjustments.

7    His total offense level is 17.

8    On August 2, 2006, Mr. Marrero was sentenced to

9 three years' imprisonment for possession with intent to

10 distribute a controlled substance, possession of a weapon

11 with a removed obliterated or altered serial number, and

12 conspiracy in the second degree by the New Castle County

13 Superior Court in Wilmington, Delaware.  Accordingly, three

14 criminal history points resulted from that conviction.

15    On January 13, 2012, he was sentenced to 12 months'

16 probation for possession of controlled substances and/or

17 counterfeiting human growth hormones.  For this conviction,

18 one criminal point results.

19    On February 19, 2016, Mr. Marrero benefited from a

20 suspended sentence of nine years and six months for

21 possession of a Schedule I or II controlled substance by the

22 Circuit Court for the County of Greensville, Virginia, which

23 results in one more criminal history point.

24    Because Mr. Marrero committed this offense while

25 under a criminal justice sentence, because of his conviction

by the Circuit Court for the County of Greensville, Virginia,

two more criminal history points result pursuant to

sentencing guideline section 4A1.1(d).

Accordingly, Mr. Marrero's total criminal history

points add up to seven, which places him in Criminal History

Category IV.

Based on a total offense level of 17 and a Criminal

History Category of IV, the guideline imprisonment range for

Mr. Marrero's offense is from 37 to 46 months.

There is a fine range of $10,000 to $95,000, plus a

supervised release term of at least one year but not more

than three years.

The probation officer has correctly computed the

guideline computations, and the pre-sentence investigation

report satisfactorily reflects the components of

Mr. Marrero's offense by considering its nature and

circumstances.

The Court has also considered the other sentencing

factors set forth in Title 18, United States Code

section 3553(a).

Mr. Marrero is 31 years old.  He is a resident of

Delaware.  He completed the eighth grade and was unemployed

prior to his arrest for his offense.

He has a history of using marijuana that began

between the ages of 9 and 13, and has a history of consuming

1   alcohol, which have resulted in some DWI convictions.

2          He is physically healthy but reported a diagnosis

3   of learning disabilities.

4          Mr. Marrero's vast prior record, as reflected in

5   the pre-sentence investigation report and history of

6   convictions, indicates that his Criminal History Category

7   substantially underrepresents the seriousness of his offense

8   or the likelihood that he will commit other crimes.

9          Accordingly, the Court will impose an upward

10  variant sentence pursuant.

11         Mr. Marrero has been arrested at least 44 times

12  during his life.  His first reported arrest was at the age of

13  12, at which time he was found delinquent.  He was

14  adjudicated as a juvenile on nine separate occasions.

15         As an adult, Mr. Marrero has more than 20

16  convictions, which include but are not limited to driving

17  under the influence, resisting arrest, possession with the

18  intent to deliver controlled substances, possession of

19  weapons, aggravated harassment, maintaining a dwelling for

20  keeping controlled substances, possession of drug

21  paraphernalia, and assault in the second degree.

22         In addition to those offenses, Mr. Marrero has also

23  incurred numerous traffic violations in Delaware, including

24  conviction for driving without a license, driving while under

25  a suspended or revoked license, and failure to reinstate his

1    license.

2           As a result, his Delaware driver's license, number

3    1334287, has been suspended.  Currently he has two

4    outstanding arrest warrants, and one is extraditable for

5    drug-related charges in Delaware.

6           According to documentation received from the

7    probation officer, in the District of Delaware, Mr. Marrero

8    has the following known history of warrants:  25 failure to

9    appear, 13 violations of probation, and 28 failures to pay,

10   all of which is consistent with Mr. Marrero's utter disregard

11   for the law and highly likelihood of recidivism.

12          The Court finds that a sentence within the

13   applicable guideline range does not reflect the seriousness

14   of the offense, does not promote respect for the law, does

15   not protect the public from further crimes by Mr. Marrero,

16   and does not address the issues of deterrence and punishment.

17          Accordingly, the Court will vary upward based on

18   the underrepresentation of Defendant's criminal history.

19          It is the judgment of the Court that Josue

20   Marrero-Perez is committed to the custody of the Bureau of

21   Prisons to be imprisoned for a term of 72 months.

22          Upon release from confinement, Mr. Marrero shall be

23   placed on supervised release for a term of three years to be

24   served under the following term and conditions:

25          He shall observe the standard conditions of

1    supervised release recommended by the United States

2    Sentencing Commission and adopted by this Court.

3              He shall not commit another Federal, State or local

4    crime.

5              He shall not possess firearms, destructive devices

6    or other dangerous weapons.

7              He shall not possess controlled substances

8    unlawfully.

9              He shall participate in transitional and reentry

10   support services, including cognitive behavioral treatment

11   services, under the guidance and supervision of the probation

12   officer.

13             Mr. Marrero shall participate in the services until

14   he is satisfactorily discharged by the service provider with

15   the approval of the probation officer.

16             Now, those services include, Mr. Marrero, anger

17   management services.

18             He shall complete his high school education and

19   shall participate in vocational training and a job placement

20   program as recommended by the probation officer.

21             He shall provide the probation officer access to

22   any financial information upon request.

23             He shall participate in an approved mental health

24   treatment program for evaluation and to determine if

25   treatment is necessary.

1      If deemed necessary, treatment will be arranged by

2 the probation officer in consultation with the treatment

3 provider.

4      The modality, duration and intensity of treatment

5 will be based on the risks and needs identified.

6      Mr. Marrero shall contribute to the cost of those

7 services based on his ability to pay or the availability of

8 payments by third parties.

9      He shall cooperate in the collection of a DNA

10 sample as directed by the probation officer pursuant to the

11 revised DNA collection requirements and Title 18, United

12 States Code section 3563(a)(9).

13      He shall submit himself and his property, house,

14 residence, vehicles, papers and effects, computers and other

15 electronic or data storage devices or media to a search at

16 any time, with or without a warrant, by the probation officer

17 and, if necessary, with the assistance of any other law

18 enforcement officer, but only in the lawful discharge of the

19 supervision functions of the probation officer, who must have

20 a reasonable suspicion of unlawful conduct or of a violation

21 of a condition of supervised release.

22      The probation officer may seize any communication

23 or electronic device or medium, which will be subject to

24 further forensic investigation or analysis.

25      Failure to permit a search and seizure may be

1  grounds for revocation of supervised release.

2        Mr. Marrero shall warn any other resident or

3  occupant that his premises may be subject to searches

4  pursuant to this condition.

5        He shall not possess or use controlled substances

6  unlawfully and shall submit to a drug test within 15 days of

7  release from imprisonment.

8        After his release, Mr. Marrero shall submit to

9  random drug testing, not less than three samples during the

10  supervision period, but not more than 104 samples each year,

11  in accordance with the Drug Aftercare Program Policy of the

12  United States Probation Office, as has been approved by this

13  Court.

14        If the illegal use of controlled substances is

15  detected in any sample, Mr. Marrero shall participate in an

16  inpatient or an outpatient substance abuse treatment program

17  for evaluation or treatment as arranged by the probation

18  officer.

19        Payment shall be based on his ability to pay or the

20  availability of payments by third parties as approved by the

21  Court.

22        Having considered Mr. Marrero's financial

23  condition, a fine is not imposed.

24        A special monetary assessment in the amount of $100

25  for each count, for a total of $200, is imposed, however, as

1    required by law.

2            Mr. Marrero, you have a right to appeal your

3    conviction and sentence.

4            Any notice of appeal must be filed in this court

5    within 14 days from when the judgment is entered.

6            You have a right to apply for leave to appeal *in*

7    *forma pauperis* if you are unable to pay the cost of an

8    appeal.

9            Because you are represented by court-appointed

10   counsel, he will continue to represent you through any appeal

11   unless a substitute counsel is later appointed.

12           The forfeiture will be made part of the judgment.

13           I will recommend that Mr. Marrero be designated to

14   either FCI Fairton, New Jersey, or FCI Fort Dix, New Jersey.

15           Also, I would recommend that he participate in the

16   500-hour drug treatment program, if he qualifies.

17           Remember, Mr. Gonzalez, this is a weapons case.

18           MR. GONZALEZ-BOTHWELL:  He is aware of that,

19   Your Honor.

20           THE COURT:  So I hope that he does qualify, and I

21   do hope that he is accepted in the program.

22           MR. GONZALEZ-BOTHWELL:  Thank you, Your Honor.

23           THE COURT:  And, Mr. Marrero, if there are any

24   courses leading to a high school diploma while in the

25   institution, please take advantage of them, plus any

1  vocational training that you may be interested in.

2          Also, while in the institution, you may want to ask

3  if there is any treatment for anger management -- I really

4  think you need that -- plus any psychological treatment that

5  you may be -- that you may qualify for.

6          Anything else?

7          MR. GONZALEZ-BOTHWELL:  Yes, Your Honor.

8          Probation had provided me this morning with the

9  documentation they used, and I request that they provide me a

10 copy.  I requested one, but they only allowed me to review it

11 in court.  I request a copy to be made available for my

12 record from the U.S. Probation.

13          She stated that she needed an order from the Court.

14          THE COURT:  Can you make a copy of that for

15 Mr. Gonzalez?

16          THE PROBATION OFFICER:  Yes, sir.

17          THE COURT:  What Ms. Mojica told me was that, when

18 you asked for those documents, she asked that you go by the

19 probation officer to review and get whatever copies you

20 needed, but you didn't go.

21          MR. GONZALEZ-BOTHWELL:  No.  I understand.  That's

22 why I am asking for a copy from the Court, like she told me

23 that I needed to do.

24          THE COURT:  Okay.  No problem.

25          Anything else?

1          MR. GONZALEZ-BOTHWELL:  Your Honor, the only thing

2     is that he would prefer, if the Court would make the

3     recommendation to a federal institution in Pennsylvania

4     instead of New Jersey.

5          THE COURT:  Well, I recommended these two because

6     they are near Delaware, because he is wanted in Delaware.

7          MR. GONZALEZ-BOTHWELL:  We are aware of that,

8     Your Honor.  Yes.  Yes.

9          THE COURT:  All right.  Thank you.

10          You are excused.

11

12          (PROCEEDINGS ADJOURNED AT 10:10 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the
United States District Court for the District of Puerto Rico,
appointed pursuant to the provisions of Title 28, United
States Code, Section 753, do hereby certify that the
foregoing is a true and correct computer-aided transcript of
proceedings had in the within-entitled and numbered cause on
the date herein set forth; and I do further certify that the
foregoing transcript has been prepared by me or under my
direction.

S/Joe Reynosa

_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000